[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 178.]

VILLAGE OF WHITEHOUSE, APPELLEE, *v.* TRACY, TAX COMMR., APPELLANT.

[Cite as *Whitehouse v. Tracy*, 1995-Ohio-212.]

*Taxation—Real property—Exemptions—R.C. 5709.08 applied to village water-well field.*

(No. 94-1045—Submitted December 15, 1994—Decided May 10, 1995.)

APPEAL from the Board of Tax Appeals, No. 93-A-774.

————————————

{¶ 1} The village of Whitehouse, appellee, owns a 19.083-acre water-well field from which it draws water to provide to its residents. Much of the well-field's piping and equipment is below ground, but Whitehouse has installed above-ground well heads and constructed service roads and several buildings. The field has effectively been segmented into smaller parcels by the village's activities on the property.

{¶ 2} Whitehouse allows a local farmer who farms adjacent land to grow crops on the arable segments of the well-field. The village and the farmer have no lease or other written contract defining their relationship. The village collects no rent from the farmer, and the farmer is not obligated to share proceeds from his use of the land with the village. The farmer decides what crops to plant, but Whitehouse can enter the planted area to maintain the well system. Allowing the farmer to plant the well-field saves Whitehouse the cost of mowing and maintaining the segments of the field not occupied by the village's operations. According to the testimony of the village administrator, the well-field is a popular place for people to jog and walk, although people cannot jog or walk on the field when crops are growing.

{¶ 3} While the village administrator testified that the farmer's activities on village property are subject to the village's authority to use any or all of the well-field for its own purposes, the administrator acknowledged that the village would

normally allow the farmer to finish the growing season before the village would change the use of the arable land.

{¶ 4} Whitehouse applied to exempt the well-field from real estate taxes for tax year 1991 and to remit taxes, penalties, and interest for tax years 1988, 1989, and 1990. The Tax Commissioner, appellant, accepted the recommendation of an attorney examiner and exempted the wellheads, the land beneath them, and the service roads. However, the commissioner, under R.C. 5713.04, retained the remaining land on the tax list, finding that this land was not used exclusively for a public purpose within the meaning of R.C. 5709.08.

{¶ 5} Whitehouse appealed to the Board of Tax Appeals ("BTA"). The BTA modified the commissioner's order and exempted all the property. The BTA ruled that this farming was not the type of activity that would defeat the exemption, since testimony clearly showed that the village allowed the farmer to use the land solely as a cost-effective way for the village to maintain the property. The BTA found that the well-field "is not ideal for farming due to the configuration of the land and the driveways and buildings located thereon," and effectively concluded that the farming was an incidental use of the property which did not defeat its characterization as "public property used exclusively for a public purpose."

{¶ 6} The cause is now before this court upon an appeal as of right.

———————————

*Philip C. Davis*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Janyce C. Katz*, Assistant Attorney General, for appellant.

———————————

**ALICE ROBIE RESNICK, J.**

{¶ 7} Whitehouse claims exemption for the entire water-well field under R.C. 5709.08, which provides in pertinent part that "public property used exclusively for a public purpose, shall be exempt from taxation."

{¶ 8} In *Carney v. Cleveland* (1962), 173 Ohio St. 56, 18 O.O.2d 256, 180 N.E.2d 14, paragraph one of the syllabus, we set forth the conditions under which property may be exempted pursuant to R.C. 5709.08: "* * * (1) the property must be public property, (2) the use thereof must be for a public purpose, and (3) the property must be used exclusively for a public purpose." See *Bd. of Park Commrs. of Troy v. Bd. of Tax Appeals* (1954), 160 Ohio St. 451, 453, 52 O.O. 338, 339, 116 N.E.2d 725, 727.

{¶ 9} The commissioner argues that the property here is not used exclusively for a public purpose because a private citizen is farming the property for his own profit. Whitehouse contends the farming is an incidental use performed for maintaining the fields and should not bar exemption.

{¶ 10} In *Cleveland v. Perk* (1972), 29 Ohio St.2d 161, 58 O.O.2d 354, 280 N.E.2d 653, paragraphs one and two of the syllabus, we held:

"1. The statutory requirement for exemption from taxation of 'public property used exclusively for a public purpose' is not met if the property is used merely in part for a public benefit, and a showing that a public purpose is served by the use of the premises is not sufficient to constitute an exclusive public purpose. (Paragraph four of the syllabus of *Cleveland v. Board* [*of Tax Appeals*] [1950], 153 Ohio St. 97 [41 O.O. 176, 91 N.E.2d 480], followed.)

"2. Where possession of designated portions of property belonging to a municipal corporation is transferred for stated periods of times and for fixed rentals to private entities, who *pro tempore* enjoy the right to occupy, manage and operate the same in part for their own purposes and profit, the designated portions of the property so occupied thereby lose their identity as *public* property used *exclusively*

for a public purpose and are not exempt from taxation. (*Carney v. Cleveland* [1960] [*sic* 1962], 173 Ohio St. 56 [18 O.O.2d 256, 180 N.E.2d 14], and *Cleveland v. Perk* [1965], 2 Ohio St.2d 173 [31 O.O.2d 323, 207 N.E.2d 556], followed.)" (Emphasis *sic*.)

{¶ 11} In *Div. of Conservation & Natural Resources v. Bd. of Tax Appeals* (1948), 149 Ohio St. 33, 36 O.O. 353, 77 N.E.2d 242, a state agency applied to exempt thirty-five-hundredths of an acre that it had leased to a fish hatchery. In return, the state received live, small-mouth bass to distribute in Ohio streams managed by the agency. We denied exemption because the fish hatchery operated a private fish hatchery and rented the property for this private use. We concluded that the property was not used exclusively for a public purpose.

{¶ 12} The instant case is somewhat similar to *Div. of Conservation*. The farmer grows crops on the property, and, apparently, earns some minimal profit from this activity. However, we find it significant that no lease governs the relationship between the farmer and the village. Thus, this case can be distinguished from those cases in which a private party *leases* public land to use for a private purpose. See, *e.g.*, *Carney v. Cleveland*, *supra*, 173 Ohio St. at 58, 18 O.O.2d at 257, 180 N.E.2d at 16, in which the court, in the course of denying the exemption, remarked that "one who is in the possession and control of property and is occupying, managing and operating the same as lessee is often to be treated as the owner thereof." See, also, *Div. of Conservation*, *supra*, in which the court held at the syllabus: "Real property owned by the state and rented by it to a private citizen, who uses it exclusively for private purposes, is not exempt from taxation under Section 5351, General Code [the predecessor of R.C. 5709.08]."

{¶ 13} We are of the opinion that if the farmer were reaping substantial business profits from his farming operation on this property, such that the village would be foregoing a significant source of income by not leasing the land (perhaps in order to gain a tax exemption), this case would be difficult to distinguish from

4

the private-lease cases. We find no evidence in the record here of such an arrangement.

**{¶ 14}** Even though there is no lease involved here, our inquiry is not at an end. In *Cleveland v. Perk*, *supra*, 29 Ohio St.2d at 166, 58 O.O.2d at 357, 280 N.E.2d at 656, the court observed:

"When * * * private enterprise is given the opportunity to occupy public property in part and make a profit, even though in so doing it serves not only the public, but the public interest and a public purpose, such part of the property loses its identity as public property and its use cannot be said to be exclusively for a public purpose. A private, in addition to a public, purpose is then subserved." See, also, *Dayton v. Roderer* (1977), 50 Ohio St.2d 159,160, 4 O.O.3d 349, 350, 363 N.E.2d 740, 741.

**{¶ 15}** The rule emerges that whenever public property is used by a private citizen for a private purpose, that use generally prevents exemption. However, despite that general rule, we believe that in some situations a non-public use can be so incidental and so *de minimis* that it does not defeat an R.C. 5709.08 exemption. We hold that when the private use of the land is sufficiently incidental, the land may be characterized as "used exclusively for a public purpose."

**{¶ 16}** In *South-Western City Schools Bd. of Edn. v. Kinney* (1986), 24 Ohio St.3d 184, 187, 24 OBR 414, 416-417, 494 N.E.2d 1109, 1112, we found that a publicly owned golf course was exempt from taxation, and held that the leasing of a snack shop to a private concessioner did not violate the "exclusively for a public purpose" requirement of R.C. 5709.08. We found nothing in the record to suggest that the number of sales by the concessioner was anything other than inconsequential and trivial. *Id.* Our inquiry was guided in part by the definition of "exclusively" contained in former R.C. 5709.121:

"Real property * * * belonging * * * to the state or a political subdivision, shall be considered as used exclusively for * * * public purposes by * * * the state, or political subdivision, if it is * * *:

"* * *

"(B) * * * made available under the direction or control of * * * the state, or political subdivision for use in furtherance of or incidental to its * * * public purposes and not with the view to profit."

{¶ 17} Thus, this court has found that, even when public property is leased to a private individual or concern, the non-public use of the property must be more than incidental before the exclusive public purpose requirement will be violated. This reasoning of *South-Western City Schools Bd. of Edn. v. Kinney* seems especially relevant when, as here, no lease of the property is involved.

{¶ 18} We view the facts of this case in much the same way that the BTA viewed them. Although the record supports a clear inference that the farmer is profiting in some apparently minimal way from the use of the land, the record also reveals that the village has effectively retained full control over the use of the property. The village's assertion that it allows the farmer to farm part of the well-field *solely* in order to save mowing and maintenance expenses is unrefuted. Like the BTA, we find that the minimal non-public use of this property is insufficient to defeat the R.C. 5709.08 exemption.

{¶ 19} We find some similarities between this case and *Cleveland v. Carney* (1961), 172 Ohio St. 189, 196, 15 O.O.2d 334, 337-338, 174 N.E.2d 254, 259, in which the court determined that a possible non-public use of public property was "only a small incidental part of the overall use, insufficient to destroy the tax-exempt character" of property "in the main * * * used exclusively for a public purpose."

{¶ 20} We cannot end our discussion without commenting on *Toledo v. Jenkins* (1944), 143 Ohio St. 141, 28 O.O. 72, 54 N.E.2d 656, relied upon by both

6

the village and the BTA.  As explained in *Cleveland v Perk*, *supra*, 29 Ohio St.2d at 167, 58 O.O.2d at 357-358, 280 N.E.2d at 656-657, the commissioner's ability to now split-list property under R.C. 5713.04, so that part of a parcel may be exempt and part of it may be taxed, causes the relevant portion of *Toledo v. Jenkins* to be called into question.  The court in *Cleveland v. Carney*, *supra*, 172 Ohio St. at 196, 15 O.O.2d at 337-338, 174 N.E.2d at 259, also questioned the appropriateness of the *Toledo v. Jenkins* approach.  We therefore decline to cite *Toledo v. Jenkins* in support of our holding.

**{¶ 21}** The BTA's decision that the disputed property should be exempt from taxation is reasonable and lawful and is hereby affirmed.

*Decision affirmed.*

WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., DOUGLAS and COOK, JJ., dissent.

_____

**MOYER, C.J., dissenting.**

**{¶ 22}** "The word, 'exclusively,' is significant and may not be ignored in a situation where exemption from taxation is claimed."  *Carney v. Cleveland* (1962), 173 Ohio St. 56, 58, 18 O.O.2d 256, 257, 180 N.E.2d 14, 16.  Because the majority has not applied the plain words of the statute or the precedent controlling here, I dissent.

**{¶ 23}** R.C. 5709.121 defines the term "exclusively" as:

"Real property * * * belonging * * * to the state or a political subdivision, shall be considered as used exclusively for * * * public purposes by * * * the state, or political subdivision, if it is * * *:

"* * *

"(B) * * * made available under the direction or control of * * * the state, or political subdivision for *use in furtherance of or incidental to* its * * * public purposes and *not with a view to profit*."  (Emphasis added.)

{¶ 24} The majority has supplemented the clear words of the statute in order to find an exemption. The new test created by the majority provides that if the private use of public land is "sufficiently incidental" and the private citizen is not "reaping substantial business profits," an exemption under R.C. 5709.08 may be granted. The record in this case does not tell us the amount of the profit received by the farmer. How do the Tax Commissioner and the BTA apply our new test when we are not able to completely state the facts upon which it is based? Only minor, subordinate private uses for reasons other than profit come within the exemption of R.C. 5709.08. Such is not this case.

{¶ 25} Furthermore, the majority attempts to distance itself from our holding in *Div. of Conservation & Natural Resources v. Bd. of Tax Appeals* (1948), 149 Ohio St. 33, 36 O.O. 353, 77 N.E.2d 242, by deeming it "significant that no lease governs the relationship between the farmer and the village." However, in paragraph one of the syllabus in *Carney v. Cleveland*, *supra*, where we set forth the three conditions under which property may be exempted under R.C. 5709.08, the focus is on the *use* of the public property for a public purpose. Notably absent from the three essential conditions is any mention of lease agreements.

{¶ 26} In the instant case, the use of the disputed field, the land surface above the exempted well-fields, is not exclusively for a public purpose. The farmer grows crops of his choosing on the property and earns a profit from this activity, which he does not share with the taxpayers who provide the financial resources of the village through the payment of taxes. As in *Div. of Conservation*, Whitehouse has allowed the disputed property to be used by a private citizen for a private purpose, and this use prevents exemption. Indeed, the only minor concomitant circumstance related to the farming of the property is the incidental benefit to the city of not having to mow the field. This *de minimis* benefit does not have the effect of salvaging the exemption.

8

**{¶ 27}** Whitehouse and the BTA mistakenly rely on *Toledo v. Jenkins* (1944), 143 Ohio St. 141, 28 O.O. 72, 54 N.E.2d 656. In *Toledo*, the court exempted Toledo's alfalfa fields, which were adjacent to its airport. Unlike the village of Whitehouse, Toledo received income from the sale of the farmer's crop. However, as observed in the unanimous opinion in *Perk*, *supra*, 29 Ohio St.2d at 167-168, 58 O.O.2d at 357-358, 280 N.E.2d at 656-657, the *Toledo* court chose to exempt an entire airport rather than deny exemption because parts of open fields adjacent to the airport runways were farmed. Now, property can be split-listed under R.C. 5713.04, so that part of a parcel may be exempt and part of it may be taxed. The split-listing statute, as the *Perk* opinion observed, avoids the difficult decision that the *Toledo* court faced.

**{¶ 28}** In the instant case, the commissioner split-listed the property so that the area of the property that was farmed is taxable, while the underlying water-wells, the associated equipment, and the service roads are exempt. The commissioner correctly applied the law.

**{¶ 29}** Accordingly, I would reverse the decision of the Board of Tax Appeals and reinstate the order of the Tax Commissioner.

DOUGLAS and COOK, JJ., concur in the foregoing dissenting opinion.

————————————