CITY OF PARMA HEIGHTS, APPELLANT, *v.* WILKINS, TAX COMMR., ET AL., APPELLEES.

[Cite as *Parma Hts. v. Wilkins,*
105 Ohio St.3d 463, 2005-Ohio-2818.]

(No. 2003–2029—Submitted May 11, 2005—Decided June 22, 2005.)

**Per Curiam.**

{¶ 1} The city of Parma Heights seeks an exemption from its obligation to pay real property taxes on an ice-skating rink owned by the city. The property in question—identified in the Cuyahoga County Auditor's records as parcel number 471–17–025—is known as the Greenbrier Ice Rink.

{¶ 2} At issue here are tax years 1996, 1997, 1998, and 1999, when the city owned the property but leased it to an entity known as Voinovich–Carney Ice Facilities Group or "VC Ice." VC Ice was an Ohio limited-liability company that marketed itself to the city as "an ice facilities development and management firm specializing in structuring entities which, with partners, it operates through autonomous investment vehicles."

{¶ 3} The lease signed by representatives of the city and VC Ice in 1995 called for VC Ice to pay the city a rental fee of $60,000 annually for ten years. In return for the payments, VC Ice was entitled under the lease to "use and occupy" the ice rink and to operate and maintain the rink as an ice-skating facility for the paying public. The lease also indicated that any employees hired by VC Ice to operate the ice rink would be VC Ice employees, not public employees, and VC Ice was required under the lease to pay for liability and property insurance as well as all utility charges for the rink. In addition, VC Ice was obligated by the terms of the lease to pay "all taxes * * * whatsoever, including all governmental charges of whatsoever name, nature or kind, which may be levied, assessed or charged * * * against the land * * * or * * * any building or buildings, or any other improvements now or hereafter thereon."

{¶ 4} VC Ice terminated its lease with the city in 1999.

{¶ 5} In 2000, the city sought an exemption under R.C. 5713.08 for real property taxes owed or paid on the property for 1996, 1997, 1998, and 1999. The city's application identified three statutory provisions as grounds for the exemption request: (1) R.C. 5709.08, which exempts from taxation any "public property used exclusively for a public purpose"; (2) R.C. 5709.081, which exempts certain publicly owned athletic facilities; and (3) R.C. 5709.12, which exempts some public property used for charitable purposes.

{¶ 6} The Tax Commissioner denied the exemption request, finding that the property "was used for a private purpose during tax years 1996 through 1999."

According to the Tax Commissioner, VC Ice used the ice rink "for its own business purposes" rather than a public purpose. VC Ice "used the property to generate approximately $439,523.00 in gross revenue," the Tax Commissioner explained, and he noted that the property "was to be run as other for-profit recreational facilities, such as private health clubs."

{¶ 7} The city then appealed under R.C. 5717.02 to the Board of Tax Appeals. The BTA in turn affirmed the Tax Commissioner's decision, finding that VC Ice had "leased the premises from the city with a view to profit." Users of the ice rink were charged market rates to skate there when VC Ice operated the rink, according to the BTA, and the "entire reason for the lease was to cut costs and make the facility more profitable." Explaining that "[r]eal property used in carrying on a private or proprietary function in competition with other enterprises engaged privately in similar activities is not entitled to exemption," the BTA affirmed the Tax Commissioner's decision for all four years in question.

{¶ 8} The city has now appealed to this court. For the reasons that follow, we affirm the BTA's decision.

{¶ 9} "In reviewing decisions of the BTA, we determine whether the BTA's decision is reasonable and lawful." *Standards Testing Laboratories v. Zaino,* 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 10. "It is not the function of this court to substitute its judgment for that of the BTA on factual issues," although any facts determined by the BTA "must be supported by sufficient probative evidence." *Bethesda Healthcare, Inc. v. Wilkins,* 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, ¶ 18.

{¶ 10} Any statutes exempting property from taxation "must be strictly construed." Id. at ¶ 19. "[T]he burden rests on the one claiming an exemption to demonstrate that the property qualifies." *True Christianity Evangelism v. Zaino* (2001), 91 Ohio St.3d 117, 742 N.E.2d 638. That burden falls on the party seeking an exemption because "tax exemption is in derogation of the rights of all taxpayers and necessarily shifts a heavier tax burden upon the non-exempt." *Joint Hosp. Serv., Inc. v. Lindley* (1977), 52 Ohio St.2d 153, 155, 6 O.O.3d 371, 370 N.E.2d 474.

{¶ 11} The city argues first that it is entitled to a tax exemption under R.C. 5709.08, which exempts from taxation any "public property used exclusively for a public purpose." To qualify for a tax exemption under the statute, (1) the property "must be public property, (2) it must be used for a public purpose, and (3) the use must be exclusively for a public purpose." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783.

{¶ 12} We have said in past cases that "whenever public property is used by a private citizen for a private purpose, that use generally prevents exemption." *Whitehouse v. Tracy* (1995), 72 Ohio St.3d 178, 181, 648 N.E.2d 503. The rule

explained more than 30 years ago remains true today: "When * * * private enterprise is given the opportunity to occupy public property in part and make a profit, even though in so doing it serves not only the public, but the public interest and a public purpose," the property no longer meets the R.C. 5709.08 requirement that the property be. "used exclusively for a public purpose." *Cleveland v. Perk* (1972), 29 Ohio St.2d 161, 166, 58 O.O.2d 354, 280 N.E.2d 653 (holding that areas of a city-owned airport that were leased to private entities for commercial enterprises were not exempt from real property taxes). And we have also noted that "one who is in the possession and control of property and is occupying, managing and operating the same as lessee is often to be treated as the owner thereof." *Carney v. Cleveland* (1962), 173 Ohio St. 56, 58, 18 O.O.2d 256, 180 N.E.2d 14 (holding that aircraft hangars built by private persons on public land were not exempt from taxes).

{¶ 13} The record before us supports the BTA's findings that (1) the city-owned ice rink in Parma Heights was leased to VC Ice during the years in question and (2) VC Ice hoped to profit from its operation of that ice rink. Tellingly, VC Ice said in its 1995 proposal to the city, "[W]e sincerely plan to make a profit," and that same proposal touted VC Ice's intent to increase revenue at the rink, keep prices at a competitive level, and expand the customer base. Also, that marketing proposal suggested that VC Ice intended to rent the ice rink "for birthday parties, corporate functions, tournaments and fund-raisers," and VC Ice's financial documents in the record before the BTA show that at one point during the years in question, more than 57 percent of the company's income from the operation of the ice rink was generated by the private rental of the rink. Other factors also undercut the city's claim that the property was devoted to a public purpose during the years in question, including the lease terms entitling VC Ice to "use and occupy" the rink, the language in the lease giving the responsibility for the "operation and management" of the rink to VC Ice, and the city's agreement that employees at the ice rink would not be treated as public employees while the lease was in effect.

{¶ 14} And though the city is before us seeking a tax exemption, it was VC Ice that agreed in the lease to pay all taxes on the property. "The obvious purpose of the grant of tax exemption to governmental bodies [in R.C. 5709.08] is to confer a benefit upon them." *Cleveland v. Perk*, 29 Ohio St.2d at 168, 58 O.O.2d 354, 280 N.E.2d 653, fn. 3. Yet under the terms of the lease signed by the city and VC Ice, any rebates of taxes paid by VC Ice "shall belong to Lessee [VC Ice]." That arrangement—like various other provisions in the lease—suggests that VC Ice's use of the ice rink was not consistent with the text of or purposes underlying R.C. 5709.08, which is designed to help governmental bodies rather than private commercial interests.

{¶ 15} In response to all of this, the city contends here that VC Ice never intended to profit from its operation of the ice rink. Instead, VC Ice's sole objective was the public-spirited one of providing a better ice-skating facility for the benefit of area residents, the city argues. The BTA found otherwise, however, explaining that "VC Ice leased the premises from the city with a view to profit." Probative evidence in the record supports that finding, and of course we always give wide discretion to the BTA in evaluating the credibility of witnesses and the weight that should be given to any evidence presented to it. As a result, we conclude that the city has not met its burden of showing that it is entitled to an R.C. 5709.08 tax exemption for the years when the ice rink was leased to VC Ice.

{¶ 16} To be sure, we have noted that "in some situations a non-public use can be so incidental and so *de minimus* that it does not defeat an R.C. 5709.08 exemption." *Whitehouse,* 72 Ohio St.3d at 181, 648 N.E.2d 503 (holding that a private farmer's use of village-owned land was "sufficiently incidental" when the village retained full control over the use of the property, received no rent from the farmer, had no lease or other written contract with the farmer, and allowed him to farm the land solely in order to save mowing and maintenance expenses for the village). See, also, *Bd. of Edn. of South–Western City Schools v. Kinney* (1986), 24 Ohio St.3d 184, 24 OBR 414, 494 N.E.2d 1109 (holding that the renting of an apartment and the operation of a privately run snack shop and pro shop at a city-owned golf course did not defeat the city's request for a tax exemption under R.C. 5709.08, because the renter's presence served the public purpose of deterring vandalism at the public course and no evidence indicated that the two shops generated any profit).

{¶ 17} Those cases do not call into doubt the lawfulness or reasonableness of the BTA's decision in this case, however. The lease agreement gave VC Ice the right to use and occupy the property, and it called for VC Ice and its own employees to play a central—not an incidental—role in the operation of the city's ice rink. And though the company might not have realized the profits that it had hoped to generate under the lease, any tax exemption for the property will—under the terms of the lease—benefit VC Ice rather than the city. The city's ongoing effort to secure that tax exemption for VC Ice undercuts the city's claim that the lease served solely a public purpose that benefited only the city and its residents.

{¶ 18} For all of these reasons, we find that the BTA's decision to deny an R.C. 5709.08 tax exemption to the city was reasonable and lawful.

{¶ 19} We also conclude that the city is not eligible for an R.C. 5709.081 tax exemption. That statutory provision grants a tax exemption to real or personal property that is "owned by a political subdivision" and is used as a "public

recreational facility for athletic events." The statute requires that any such property meet various conditions to qualify for the exemption, and among those conditions is a requirement that the property be "controlled and managed" by the political subdivision. R.C. 5709.081(A)(1).

{¶ 20} In denying the city's request for a tax exemption, the BTA noted that VC Ice was entitled under the lease to set rental fees at the ice rink, was responsible for maintaining the interior of the rink, and was obligated to pay rink employees and all utility and insurance expenses. Those findings are supported by the record, and we note as well that VC Ice marketed itself to the city as an "ice facilities development and management firm" and promised to "implement its lease by use of * * * [various] management services for rink operations."

{¶ 21} The BTA could rightly find from these and other statements in the record that the property was not controlled and managed by the city while the lease was in effect. Indeed, when the lease was terminated by VC Ice in 1999, a memo prepared by the city's law director announced that the city would "resume operation of the ice rink" in an "orderly transition" from "V.C. Ice (the private operator of our Ice Rink since July 1995)." The city has not met its burden of showing that it controlled and managed the ice rink while the lease was in effect, and therefore the Tax Commissioner and the BTA properly denied the city's request for an R.C. 5709.081 exemption.

{¶ 22} We likewise find that the city is not entitled to the "charitable purposes" tax exemption described in R.C. 5709.12. That provision grants a tax exemption to publicly owned property that is "used exclusively for the accommodation or support of the poor." R.C. 5709.12(B).

{¶ 23} No language in the lease or in other documents in the record before the BTA suggests that VC Ice or the city sought to use the property for charitable purposes in support of the poor, and indeed the city typed the word "No" next to the words "Property used for Charitable Purposes" on the form requesting a tax exemption from the Tax Commissioner for the year 2000 (not at issue here), when the lease with VC Ice was no longer in effect. (The city later filed the application at issue here in which it did claim the charitable exemption for the property for 1996 through 1999.) And though R.C. 5709.12(D)(1) confers certain tax benefits on private nonprofit corporations that are "exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code of 1986, 100 Stat.2085, 26 U.S.C.A. 1, as amended," testimony before the BTA in this case established that VC Ice was not a 501(c)(3) entity.

{¶ 24} R.C. 5709.12(B) also grants a tax exemption for real property "belonging to institutions that is used exclusively for charitable purposes." Even if the city can be considered an institution, however, it is not eligible for this exemption either. "Whether an institution renders sufficient services to persons who are

unable to afford them to be considered as making charitable use of property must be determined on the totality of the circumstances * * *." *Bethesda Healthcare, Inc.*, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, at ¶ 39. In this case, the city has identified no evidence in the record suggesting that its lease with VC Ice conferred a charitable benefit on anyone. VC Ice said itself in written materials supplied to the city in 1995 that it "sincerely plan[ned] to make a profit" from its operation of the ice rink. The Tax Commissioner's decision to deny the city's request for a charitable exemption was sound, and the BTA acted reasonably and lawfully when it affirmed that decision.

{¶ 25} The city has failed to carry its burden of proof on its request for a tax exemption under R.C. 5709.08, 5709.081, and 5709.12. The Tax Commissioner properly denied that request, and the BTA's decision to do the same was reasonable and lawful and was supported by the evidence in the record. We therefore affirm the BTA's decision.

Decision affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Joseph D. Carney, for appellant.

Jim Petro, Attorney General, and Janyce C. Katz, Assistant Attorney General, for appellee Tax Commissioner.