OPINION
{¶ 1} This is an appeal in a wrongful death case following a jury verdict in favor of appellee, Harlan D. Reihard, Executor ("Reihard"), for $1.25 million. Appellants are John Dunlop, D.O. and 4M Emergency Services, Inc. ("4M"). On review, we affirm the judgment entry of the trial court.
 {¶ 2} Reihard is the surviving spouse of Anita L. Reihard. Mrs. Reihard was a kidney dialysis patient under the care of Trumbull Cardiovascular Care, Inc. and Rao Sudheendra, M.D. from February 16, 2000 through July 3, 2001.
 {¶ 3} On April 10, 2002, Mrs. Reihard was treated in the emergency room of St. Joseph's Health Center by John Dunlop, D.O. On that date, John Dunlop, D.O. was an employee of 4M. Mrs. Reihard died on May 30, 2002.
 {¶ 4} In 2003, Reihard filed a wrongful death action against Trumbull Cardiovascular Care, Inc., Rao Sudheendra, M.D., 4M, and John Dunlop, D.O. Eventually, all parties save for 4M were dismissed from the lawsuit.
 {¶ 5} The case proceeded to a jury trial, and the jury returned a verdict in favor of Reihard, and against 4M, on January 14, 2005, in the amount of $1.25 million. The trial court entered judgment accordingly on the same day.
 {¶ 6} 4M filed a motion for a new trial on January 28, 2005, which the trial court denied on February 22, 2005.
 {¶ 7} On February 25, 2005, the trial court entered a second judgment entry for $1.25 million against 4M.
 {¶ 8} In the meantime, on January 20, 2005, Reihard filed a motion for prejudgment interest, which was heard by the trial court on April 29, 2005.
 {¶ 9} On April 22, 2005, 4M filed a motion to have the trial court make findings of fact and conclusions of law with respect to Reihard's motion for prejudgment interest.
 {¶ 10} On May 27, 2005, the trial court entered a judgment entry containing findings of fact and conclusions of law regarding the motion for prejudgment interest, and entering judgment for prejudgment interest in favor of Reihard in the amount of $299,381.88.
 {¶ 11} On June 1, 2005, the trial court entered an amended judgment entry. This judgment entry again awarded judgment to Reihard for $1.25 million, reiterated the award of prejudgment interest contained in its May 27, 2005 judgment entry, and stated that "[t]his is a final appealable order and there is no just cause for delay." It is from this judgment entry of June 1, 2005 that 4M and John Dunlop, D.O. have filed the instant appeal. Their notice of appeal was filed on June 24, 2005.
 {¶ 12} The first assignment of error is as follows:
 {¶ 13} "The trial court erred in denying appellants' motion for a new trial as the jury's determination that Dr. Dunlop's alleged negligence proximately caused Mrs. Reihard's death was against the manifest weight of the evidence."
 {¶ 14} Preliminarily, we need to examine the finality of the orders entered prior to June 1, 2005, to determine whether they were final orders from which an appeal should have been prosecuted within thirty days. The narrow question is whether Reihard's motion for prejudgment interest, filed January 20, 2005, extends the time for filing a notice of appeal under the appellate rules. We conclude that it does.
 {¶ 15} In this case, the judgment entries of January 14, 2005, February 22, 2005, and February 25, 2005 did not adjudicate all claims then pending before the trial court, did not contain the Civ.R. 54(B) determination that there is no just reason for delay, and, therefore, were not final orders for purposes of appeal. The motion for prejudgment interest was still pending when those three judgment entries were filed, and until that motion was adjudicated there was no final order to appeal.[1]
 {¶ 16} The judgment entry of May 27, 2005, which awarded prejudgment interest to Reihard, was a final order in the prejudgment interest proceeding.[2] Upon the filing of this judgment entry, all claims then pending before the trial court were resolved and no further determination under Civ.R. 54(B) that "there is no just reason for delay" was necessary, because there were no other claims then pending. The judgment entry of June 1, 2005 was, therefore, a nullity. The instant appeal was timely filed as to the entry of May 27, 2005.
 {¶ 17} In this first assignment of error, Dr. Dunlop and 4M argue that the trial court should have granted their motion for a new trial because the jury's verdict was against the manifest weight of the evidence.
 {¶ 18} Civ.R. 59 permits the filing of a motion for a new trial, in pertinent part, as follows:
 {¶ 19} "(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 20} "* * *
 {¶ 21} "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 {¶ 22} "* * *
 {¶ 23} "(6) The judgment is not sustained by the weight of the evidence; * * *
 {¶ 24} "(7) The judgment is contrary to law;
 {¶ 25} "* * *
 {¶ 26} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 {¶ 27} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."
 {¶ 28} With regard to Civ.R. 59, this court has recently stated:
 {¶ 29} "It is within the sound discretion of the trial court to grant or deny a new trial under Civ.R. 59. * * * The trial court must engage in a limited weighing of the evidence when presented with a motion for a new trial. * * *
 {¶ 30} "When the claim is that the jury verdict is against the manifest weight of the evidence, a reviewing court must examine the entire record to determine if the verdict is supported by some competent, credible evidence. * * * An appellate court will not overturn a verdict supported by competent, credible evidence."[3]
 {¶ 31} Dr. Dunlop and 4M contend that "the jury's finding that Dr. Dunlop's alleged negligence in failing to start antibiotics on April 11, 2002 was the proximate cause of Mrs. Reihard's death is clearly against the manifest weight of the evidence." Their argument is further summed up in their brief as follows:
 {¶ 32} "[Reihard] contended that if Mrs. Reihard had received one additional dose of oral or IV antibiotics on April 11, she would have avoided the April 19, 2002 [valve replacement] surgery. * * * All parties to this action agreed that Mrs. Reihard's death was due to her inability to recover from the surgery of April 19, 2002. * * * Therefore, the proximate cause issue alleged by [Reihard] was whether one dose of IV antibiotics on April 11th would have prevented the April 19, 2002 surgery to remove the vegetations and repair the heart valves. * * *
 {¶ 33} "[T]he testimony of [Reihard's] infectious disease expert, Dr. Zenilman, clearly established that [Reihard] would have required surgery even if she had received a dosage of antibiotics on April 11th."
 {¶ 34} Thus, the thrust of Dr. Dunlop and 4M's argument in support of this first assignment of error is that proximate cause for Mrs. Reihard's death cannot be traced to Dr. Dunlop's failure to administer antibiotics on April 10th or the early morning hours of April 11th. Mrs. Reihard had been developing a blood clot (thrombus) well before she presented to the emergency room on April 10th that would have required surgery whether or not antibiotics had been administered on April 10th or April 11th. Therefore, argue Dr. Dunlop and 4M, a new trial should have been granted by the trial court.
 {¶ 35} In contrast, Reihard points to the testimony of Dr. Zenilman and Dr. Burstein to the effect that one dose of Vancomycin on April 10th or April 11th would probably have fought off the bacterial infection so that she would not have required surgery on April 19; that the antibiotics were started too late and were ineffective when they were administered because too much damage to the heart valves had already been done; and that Mrs. Reihard did not become a surgical candidate until her endocarditis became impervious to antibiotics on April 13th. As for the theory about the blood clot requiring surgery whether or not antibiotics were administered timely, Reihard argues that this theory was only developed during trial, that none of Reihard's experts were asked about a blood clot prior to trial, and that the jury chose to disregard this theory in its verdict.
 {¶ 36} The trial court overruled the motion for new trial on February 22, 2005. The judgment entry filed on that date does not reflect the "limited weighing of the evidence" on the part of the trial court, but its later judgment entry containing findings of fact and conclusions of law, and awarding prejudgment interest, does contain such an exercise by the trial court:
 {¶ 37} "8. [Reihard] also presented the testimony from three medical experts, all of whom opined that Dr. Dunlop failed to meet the standard of care by diagnosing Mrs. Reihard as having gastroenteritis and discharging her from the emergency room on April 10, 2002. In doing so, [Reihard's] expert witnesses all emphasized how the medical facts Dr. Dunlop admitted not knowing with respect to Mrs. Reihard's condition were basic facts all physicians should know. Dr. Zenilman and Dr. Burstein [Reihard's experts] also testified that [Dr. Dunlop's] breach of the standard of care was a proximate cause of decedent's death. Furthermore, Dr. Zenilman testified that starting Mrs. Reihard on Vancomycin on April 10, 2002, would have avoided the need for surgery and her extensive hospitalization at University Hospitals. Instead, she would have been treated with antibiotics on an out-patient basis.
 {¶ 38} "9. While [Dr. Dunlop and 4M] presented testimony from three expert witnesses that Dr. Dunlop had met the standard of care, the impact of their testimony was greatly diminished when they were forced to acknowledge the elementary nature of the medical facts Dr. Dunlop had admitted not knowing and how his admitted lack of such basic knowledge made assessment of Dr. Dunlop's conduct with respect to Mrs. Reihard more problematic.
 {¶ 39} "10. As the trial progressed, it became increasingly apparent that [Dr. Dunlop and 4M's] case with respect to the standard of care issue was objectively weak and the focus of the defense shifted noticeably to proximate cause issues. [Dr. Dunlop and 4M] were able to introduce evidence supporting what the Court viewed as, by far, its best argument for non-liability, i.e., that proximate cause could not be shown since the presence of a thrombus would have necessitated the surgery Mrs. Reihard underwent even if Dr. Dunlop had correctly diagnosed her and immediately started her on antibiotics. The impact of this evidence, however, was blunted by the extensive testimony elicited from both [Reihard's] and [Dr. Dunlop and 4M's] experts detailing the critical gaps in Dr. Dunlop's basic medical knowledge. Further, [Reihard's] counsel effectively used the defense experts' support for Dr. Dunlop on the weaker standard of care issues to attack the credibility of their testimony on the more evenly-matched issues of proximate cause."
 {¶ 40} The trial court clearly engaged in a limited weighing of the evidence to conclude that a new trial based on a manifest weight analysis was not appropriate. Our review of the record likewise demonstrates that there was competent, credible evidence upon which the jury could find that Dr. Dunlop's failure to measure up to the standard of care for an emergency room physician was the proximate cause of Mrs. Reihard's death. We are not persuaded that Dr. Dunlop and 4M's theory of non-liability, regarding the thrombus that had developed in Mrs. Reihard, should trump the standard-of-care theory of liability advanced by Reihard. Our role as a reviewing court is not to choose the more scientifically appealing theory of liability or non-liability, but to determine whether the record demonstrates that competent, credible evidence was introduced to support the verdict rendered by the jury. Clearly, Reihard's case-in-chief contained competent, credible evidence and supported the theory of Dr. Dunlop's falling below the standard of care of an emergency room physician. Therefore, we do not perceive that the trial court committed an abuse of discretion in denying Dr. Dunlop and 4M's motion for a new trial.
 {¶ 41} The first assignment of error is without merit.
 {¶ 42} The second assignment of error is as follows:
 {¶ 43} "The trial court erred in excluding the testimony of Dr. Burstein on cross examination regarding proximate causation issues.
 {¶ 44} With regard to the trial court's determination of the admissibility of evidence, the Supreme Court of Ohio has prescribed the following rule:
 {¶ 45} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. * * * An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. * * * As this court has noted many times, the term `abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably."[4]
 {¶ 46} During trial, Reihard made an oral motion in limine to exclude that portion of Dr. Burstein's video deposition testimony on cross-examination relating to Mrs. Reihard's refusals to submit to a medical procedure known as a fistulogram in January 2002. The reason to have Mrs. Reihard undergo this procedure is explained in Dr. Dunlop and 4M's argument in support of allowing the subject testimony into evidence:
 {¶ 47} "The only reason that the Tesio catheter remained in place was because the existing AV fistula did not work properly. A known risk of the Tesio catheter is infection and, because of this risk, Mrs. Reihard's medical providers recommended that she undergo fistulograms in order to determine how to make the fistula function properly. Had the fistulograms been performed and the AV fistula made functional, the Tesio catheter could have been removed before Dr. Dunlop saw the patient, avoiding the likely source of infection and the unfortunate results that came from Mrs. Reihard's infection."
 {¶ 48} In contrast, Reihard argues:
 {¶ 49} "[Dr. Dunlop and 4M] elicited no testimony from Dr. Burstein or any other expert as to what consequences would have resulted from a fistulagram [sic] had it been done in January, 2002. Consequently, the jury would have been left to speculate as to what a fistulagram [sic] would have shown, whether it would have resulted in removal of the Tesio catheter and when, and whether an infection would have resulted regardless."
 {¶ 50} At trial, the trial court excluded that portion of Dr. Burstein's video testimony dealing with Mrs. Reihard's refusals to undergo the fistulograms. The trial court stated:
 {¶ 51} "I agree with the motion in limine. I do think it's irrelevant, or that, if it is relevant, it's so small it's outweighed by the prejudicial nature of it. So, therefore, there being no comparative negligence issue here and that issue really having nothing to do with the critique of the defendant in this case, I am going to grant the motion in limine[.]"
 {¶ 52} We do not believe the trial court acted unreasonably, arbitrarily, or unconscionably in excluding the subject testimony. Certainly, the testimony was prejudicial, and its putative relevance in the causal chain Dr. Dunlop and 4M were hoping to construct to show that proximate cause for Mrs. Reihard's death lay somewhere other than at Dr. Dunlop's doorstep was tenuous, at best. Even assuming Dr. Dunlop and 4M were trying to establish the proximate cause of Mrs. Reihard's death, and were not interested in establishing comparative negligence on the part of Mrs. Reihard, the causal chain is constructed upon layers of speculation as to what the fistulograms would have shown, whether the results of the fistulograms would have resulted in the removal of the Tesio catheter, and, if so, whether an infection would have resulted in any case. The trial court rightly perceived the weak links in the chain and prevented the testimony from coming into evidence. There was no abuse of discretion by the trial court.
 {¶ 53} The second assignment of error is without merit.
 {¶ 54} The third assignment of error is as follows:
 {¶ 55} "The trial court abused its discretion in permitting appellee to present evidence of medical bills in excess of the amount paid by Medicare and/or Medicaid."
 {¶ 56} Dr. Dunlop and 4M filed a motion in limine to exclude evidence of charge-offs by Medicare and Medicaid as part of the bills submitted to the jury as evidence of Reihard's damages. The trial court denied the motion, and the evidence of the charge-offs was then proffered by Dr. Dunlop and 4M. The amount of the charge-offs was $241,814. The amount actually paid to the medical providers was $210,749. Therefore, Dr. Dunlop and 4M argue in this assignment of error that the trial court erroneously permitted the jury to hear evidence that medical expenses in the amount of $452,563 were sustained in connection with Mrs. Reihard's treatment, instead of the amount that was actually paid, or $210,749. They explain their position thusly:
 {¶ 57} "[T]he patient cannot be billed beyond that which is covered either by Medicare or Medicaid (or both), and the unpaid portion of the debt is extinguished by operation of statute. Consequently, the written-off amounts do not constitute damages. They are illusory charges that exist only on paper."
 {¶ 58} This issue is currently on appeal to the Supreme Court of Ohio.[5] A review of the two cases on appeal to that court, Robinson v. Bates[6] and Ferrell v. Summa HealthSys.,[7] indicates that the decisions will turn on whether the collateral source rule will be applicable to payments that are charged-off or discounted.
 {¶ 59} The First Appellate District in the Robinson case conducted an extensive analysis of the collateral source rule, its history, its application in other states, and the public policy reasons behind it. After reviewing Ohio law, the law in a majority of other states, and the Restatement of Law, it concluded that the equitable and better-reasoned approach is to apply the collateral source rule to charged-off medical bills.[8] That court explained its position thusly:
 {¶ 60} "Under the public-policy purposes of the collateral-source rule, defendants should be liable for the full amount of damages caused by their wrongdoing, independent from the financial situation of their victims. * * *
 {¶ 61} "The undiscounted medical bills should also be admitted because they are some evidence of the severity of plaintiff's injuries. * * * An insured person would then be seen as less injured than an uninsured. We think they bleed the same."[9]
 {¶ 62} Following the Robinson decision, the Ninth Appellate District in the Ferrell case dealt specifically with Medicare charge-offs. That court stated that the issue was one of first impression. It noted that the collateral source rule is an exception to the general law of damages:
 {¶ 63} "`"The collateral source rule is an exception to the general rule of compensatory damages in a tort action, and evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act."'"[10]
 {¶ 64} In reversing the trial court judgment that had reduced a jury verdict by the amount of the Medicare charge-offs, that court stated the following rationale:
 {¶ 65} "A collateral benefit is a benefit received outside the scope of the litigation. In this case, Medicare is a source outside the litigation that covered appellant's medical care; appellant accrued medical expenses that were billed as a result of an injury she had suffered that served as the subject of her complaint against appellees. Thus, any benefit that appellant received by virtue of being covered by Medicare was outside of the scope of the lawsuit or `collateral' to the litigation."[11]
 {¶ 66} We state our concurrence with the appellate court decisions in Robinson and Ferrell, and our disagreement with the position of Dr. Dunlop and 4M in this case.
 {¶ 67} The third assignment of error is without merit.
 {¶ 68} The fourth assignment of error is as follows:
 {¶ 69} "The trial court abused its discretion in granting appellee's motion for prejudgment interest."
 {¶ 70} Prejudgment interest is permitted by R.C. 1343.03(C). R.C. 1343.03(C), as it existed on the date of Reihard's accrual of a cause of action (April 10, 2002), read as follows:
 {¶ 71} "(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid if, upon motion of any party to the action, the court determines at hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 72} The trial court noted that the Ohio General Assembly made substantial changes to R.C. 1343.03, effective June 2, 2004, but that the only legislative change to affect the instant case was the interest rate calculation.[12] The other changes are prospective only.
 {¶ 73} The four requirements for an award of prejudgment interest were stated by the Supreme Court of Ohio in the case ofMoskovitz v. Mt. Sinai Med. Ctr.:
 {¶ 74} "First, a party seeking interest must petition the court. The decision is one for the court — not any longer a jury. The motion must be filed after judgment and in no event later than fourteen days after entry of judgment. * * * Second, the trial court must hold a hearing on the motion. Third, to award prejudgment interest, the court must find that the party required to pay the judgment failed to make a good faith effort to settle and, fourth, the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case."[13]
 {¶ 75} This court has provided guidelines to determine whether a party has made a good faith effort to settle:
 {¶ 76} "A party will be deemed to have made a good faith effort to settle if the party (1) fully cooperated in discovery, (2) rationally evaluated his or her risks and potential liability, (3) did not attempt to unnecessarily delay the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party."[14]
 {¶ 77} Furthermore, "the petitioning party must also present evidence that he or she made a reasonable settlement offer, in light of such factors as the nature of the case, the injuries involved, and the applicable law."[15]
 {¶ 78} "[A] trial court's decision to award prejudgment interest is subject to an abuse of discretion standard. * * * As such, an appellate court cannot substitute its judgment for that of the trial court in this matter. * * * `A judgment awarding or denying a party's motion for prejudgment interest will not be reversed absent an affirmative showing that the underlying decision is not supported by some competent, credible evidence.'"[16]
 {¶ 79} In the instant case, the trial court made findings of fact and conclusions of law regarding its award of prejudgment interest. The trial court found that the only one of the fourMoskovitz requirements to be determined was whether Dr. Dunlop and 4M failed to make a good faith effort to settle. In this regard, the trial court found that it was demonstrated at the hearing on Reihard's motion for prejudgment interest that the insurance company claims adjuster never extended a settlement offer or responded to Reihard's settlement offer, despite having a wealth of information indicating "the manifest weaknesses of the defense case" and that a plaintiff's verdict was a distinct possibility; that if there were a verdict, substantial damages would be awarded; that she disregarded troubling issues presented by defense counsel; and that she gave inordinate weight to Dr. Dunlop's desire to have his day in court.
 {¶ 80} The trial court concluded that the insurance company adjuster "did not rationally evaluate the risks and potential liability faced by [Dr. Dunlop and 4M];" that she "adopted an unwarranted, and unwavering, position that settlement would not be considered and Dr. Dunlop would receive his day in court;" and that her "professed belief in the likelihood of a finding of non-liability was not objectively reasonable." Ultimately, the trial court concluded that Dr. Dunlop and 4M did not make a good faith effort to settle and that Reihard was entitled to prejudgment interest.
 {¶ 81} This court will not substitute its judgment for the award of prejudgment interest based upon ample findings of fact and conclusions of law made by the trial court. The trial court did not abuse its discretion in making such an award.
 {¶ 82} The fourth assignment of error is without merit.
 {¶ 83} The judgment of the trial court is affirmed.
Cynthia Westcott Rice, J., Colleen Mary O'Toole, J., concur.
[1] Miller v. First Internatl. Fid. Trust Bldg., Ltd.,165 Ohio App.3d 281, 2006-Ohio-187, at ¶ 15.
[2] Enghauser Mfg. Co. v. Eriksson Engineering Ltd. (1984),21 Ohio App.3d 121, paragraph one of the syllabus.
[3] (Citations omitted.) Ochletree v. Trumbull Mem. Hosp.,
11th Dist. No. 2005-T-0015, 2006-Ohio-1006, at ¶ 32-33.
[4] (Citations omitted.) Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271.
[5] Robinson v. Bates, 106 Ohio St.3d 1531, 2005-Ohio-5146. See, also, Ferrell v. Summa Health Sys., 108 Ohio St.3d 1509,2006-Ohio-1329.
[6] Robinson v. Bates, 160 Ohio App.3d 668, 2005-Ohio-1879.
[7] Ferrell v. Summa Health Sys., 165 Ohio App.3d 110,2005-Ohio-5944.
[8] Robinson v. Bates, 2005-Ohio-1879, at ¶ 83-85. See, also,Gustin v. Chaney, 4th Dist. No. 05CA7, 2006-Ohio-1049.
[9] Robinson v. Bates, 2005-Ohio-1879, at ¶ 83-84.
[10] (Emphasis added by Stacy court.) Ferrell v. SummaHealth Sys., 2005-Ohio-5944, at ¶ 8, quoting State ex rel.Stacy v. Batavia Local School Dist. Bd. of Edn.,105 Ohio St.3d 467, 2005-Ohio-2974, at ¶ 38, quoting Pryor v. Webber (1970),23 Ohio St.2d 104, paragraph two of the syllabus.
[11] Id. at ¶ 9.
[12] Section 1, Am.Sub. H.B. 212.
[13] (Internal citation omitted.) Moskovitz v. Mt. Sinai Med.Ctr. (1994), 69 Ohio St.3d 638, 658.
[14] Borucki v. Skiffey (Sept. 14, 2001), 11th Dist. Nos. 2000-T-0029 and 2000-T-0057, 2001 Ohio App. LEXIS 4129, at *11, citing Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus.
[15] Brucken v. Gambill (Mar. 22, 2002), 11th Dist. No. 2001-L-036, 2002 Ohio App. LEXIS 1343, at *7.
[16] (Citations omitted.) Fultz v. St. Clair, 11th Dist. No. 2001-L-165, 2002-Ohio-7142, at ¶ 137.